**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE J. BROWN, | ) | |
| | ) | CASE NO. 1:12-cv-02709 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Michelle J. Brown ("Brown") challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On February 10, 2009, Brown filed an application for POD, DIB and SSI alleging a

disability onset date of November 2, 2003. Her application was denied both initially and upon reconsideration. Brown timely requested an administrative hearing.

On March 22, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Brown, represented by counsel, and an impartial vocational expert ("VE") testified. On April 13, 2011, the ALJ found Brown was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age thirty-four at the time of her administrative hearing, Brown is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Brown has a high school education and past relevant work as a teacher and childcare worker. (Tr. 47.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Brown was insured on her alleged disability onset date, November 2, 2003 and remained insured through December 31, 2006. (Tr. 37.) Therefore, in order to be entitled to POD and DIB, Brown must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Brown established medically determinable, severe impairments, due to "a seizure disorder with nocturnal generalized tonoclonic seizures, secondary generalized tonoclonic seizures, and complex partial seizures; paroxysmal nonepileptic events and pseudoseizures; asthma; and variously diagnosed mental impairments including depression, a dysthymic disorder, an anxiety disorder, a panic disorder, and posttraumatic stress disorder."

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

(Tr. 37.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 38.) Brown was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 40, 46.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Brown was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the

evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

**VI. Analysis**

*Listing 11.03/Treating Physician*

In her first assignment of error, Brown asserts that the ALJ erred in his Step Three analysis with respect to Listing 11.03. (ECF No. 15 at 3-4.) This Listing provides as follows:

> 11.03 Epilepsy -- nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, App. 1.

Specifically, Brown argues that her treating neurologist, Lisa Kurtz, M.D., provided a medical source statement on March 14, 2011 wherein Dr. Kurtz indicated that Brown suffered from both generalized and psychomotor seizures. (Tr. 1081, Exh. 34F.) In addition, Dr. Kurtz noted that Brown had approximately one convulsive seizure per month and non-convulsive seizures several times a week. *Id.* Brown notes that the ALJ failed to mention this opinion.[2] (ECF No. 15 at 3.) This Court's review of the decision confirms that said opinion was never referenced. *Id.* Brown argues that the ALJ's failure to discuss Dr. Kurtz's opinion or give "good reasons" for rejecting her opinions violated the treating physician rule.[3] (ECF Nos. 15 at 3-4, 17

---

[2] Dr. Kurtz's medical source statement of March 2011 is contained in Exhibit 34F and was admitted into evidence prior to the ALJ's decision. (Tr. 67.)

[3] Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled

6

at 2.)

The Commissioner maintains that substantial evidence supports the ALJ's finding that Brown did not meet listing 11.03. Significantly, the Commissioner's argument does not discuss (1) whether the ALJ's Step Three analysis complied with Sixth Circuit law or (2) whether the ALJ's failure to discuss Dr. Kurtz's March 2011 opinion violated the treating physician rule. (ECF No. 16 at 11-13.) Instead, the Commissioner cites evidence which she believes supports the ALJ's Step Three conclusion as it relates to listing 11.03. Furthermore, the Commissioner's brief only discusses whether substantial evidence supports the ALJ's finding that Brown's impairments did not meet the listing, and does not consider whether substantial evidence also supports the ALJ's finding that Brown did not medically *equal* the listing. *Id.*

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 2010 WL 2294531 at * 3 (6th Cir. June 7, 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the

---

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. Pursuant to 20 C.F.R. §§ 404.1527(c) & 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or equals the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. *Id.*; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). However, a claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). **An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment**. *See Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 3-4 (6th Cir. April 1, 2011) (emphasis added); *Hunter v. Comm'r of Soc. Sec.*, 2011 WL 6440762 at * 3-4 (N.D. Ohio Dec. 20, 2011). In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision. *See Reynolds,* 2011 WL 1228165 at * 4-5; *Marok v. Astrue*, 2010 WL 2294056 at *3 (N.D. Ohio Jun. 3, 2010); *Waller v. Comm'r of Soc. Sec.*, 2012 WL 6771844 at * 3 (N.D. Ohio Dec. 7, 2012); *Keyes v. Astrue*, 2012 WL 832576 at * 5-6 (N.D. Ohio March 12, 2012).

In addition to the March 2011 opinion of Dr. Kurtz, there was significant evidence that Brown suffered from a "seizure disorder." The ALJ did a commendable job reciting much of

8

this evidence at Steps Four and Five of the sequential evaluation when crafting Brown's RFC. (Tr. 41-46.) The ALJ even included a seizure disorder among Brown's severe impairments. (Tr. 37.) Without recounting the voluminous evidence, it is fair to say that there is some dispute as to whether Brown's seizures are epileptic or non-epileptic in origin. Some treatment records indicate epilepsy (Tr. 551, 452) as acknowledged by the ALJ (Tr. 42), while others characterize the seizures an non-epileptic. (Tr. 442, 673, 751.) Many, if not most, of her records, however, simply indicate Brown has a seizure disorder without specifying whether it is epileptic or non-epileptic.

Thus, at Step Three, the ALJ was required to consider whether Brown's mental and physical impairments, alone or in combination, met or equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. In his Step Three analysis, the ALJ gave a detailed analysis of Brown's mental impairments, in which he noted the relevant listings and assessed Brown's functioning in the areas of "activities in daily living," "social functioning," "concentration, persistence, or pace," and "decompensation." (Tr. 38-40.)

With regard to Brown's seizure disorder, the ALJ stated only that: "While the claimant's physical impairments are severe, the record does not establish that they meet or medically equal the requirements of any section of the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4: including Sections 11.02 (convulsive epilepsy), and 11.03 (nonconvulsive epilepsy)." (Tr. 38.) The ALJ does not provide any further Step Three analysis of Brown's severe seizure disorder. While the decision does discuss some of the medical evidence concerning her seizures, though not the aforementioned opinion of neurologist Dr. Kurtz, it does not contain the criteria for listing 11.02 or 11.03, nor does it explain how the evidence fails to

9

meet or equal those listings. Rather, the ALJ simply states, summarily and without explanation, that the record does not establish that the listings are met or equaled.

In this regard, the instant case is analogous to *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 (6th Cir. April 1, 2011). In *Reynolds*, the ALJ determined at Step Two of the sequential evaluation process that the claimant had both severe physical and mental impairments. At Step Three, the ALJ conducted a thorough analysis of the claimant's mental impairment but "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe 'back pain' impairment) met or equaled a Listing under Section 1.00, despite his introduction concluding that they did not." *Id*. at * 3. The Sixth Circuit found this was reversible error, explaining that:

> Ultimately, the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment . . . but did not do so.
>
> * * *
>
> The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary. 20 C.F.R. § 404.1520(a)(4)(iii). Therefore, if the ALJ had properly analyzed Step Three, and had found Reynolds met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five. Additionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing.
>
> **In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and given an explained conclusion, in order to facilitate meaningful judicial review.** Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3rd Cir. 2000). As the Third

> Circuit explained, "[b]ecause we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning" supporting the determination that Reynolds' severe impairments do not meet or medically equal a listed impairment. *Burnett*, 220 F.3d at 120.

*Id.* at * 3-4 (emphasis added). Since *Reynolds*, numerous district courts have vacated and remanded ALJ decisions because of the failure to conduct a meaningful Step Three analysis which evaluates the medical evidence, compares it to the applicable listing, and provides an "explained conclusion" as to why the claimant's impairments fail to meet or equal a listed impairment. *See e.g. Waller v. Astrue*, 2012 WL 6771844 at * 2-5 (N.D. Ohio Dec. 7, 2012) *adopted*, 2013 WL 57046 (N.D. Ohio Jan. 3, 2013); *May v. Astrue*, 2011 WL 3490186 at * 7-10 (N.D. Ohio June 1, 2011) *adopted*, 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011); *Keyes v. Astrue*, 2012 WL 832576 at * 5-6 (N.D. Ohio March 12, 2012); *Hunter v. Astrue*, 2011 WL 6440762 at * 3- 4 (N.D. Ohio Dec. 20, 2011); *Marok v. Astrue*, 2010 WL 2294056 at * 5 (N.D. Ohio June 3, 2010); *Hakkarainen v. Astrue*, 2012 WL 398595 at * 10-13 (N.D. Ohio Jan. 19, 2012) *adopted* 2012 WL 396970 (N.D. Ohio Feb. 7, 2012); *Shea v. Astrue*, 2012 WL 967088 at * 8-11 (N.D. Ohio Feb. 13, 2012) *adopted* 2012 WL 967072 (N.D. Ohio March 21, 2012).

In the instant case, the ALJ failed to sufficiently articulate how he reached his conclusion that Brown's seizure disorder did not meet or equal a listed impairment. The decision states that the ALJ considered listings 11.02 and 11.03, but does not discuss the requirements a claimant must meet or medically equal to satisfy them or compare those requirements with the medical evidence of record. While the decision does discuss much of the relevant seizure evidence at later steps, the Court cannot ascertain why the ALJ found listing 11.03 was neither met nor equaled and declines to make any inferences from that discussion as it relates to Step Three. Moreover,

the opinion of Dr. Kurtz indicated that Brown suffered from both generalized and psychomotor seizures, resulting in non-convulsive seizures several times a week. (Tr. 1081, Exh. 34F.) This opinion, if credited, could support a finding that Brown met or equaled the listing. As such, not only was the ALJ's discussion at Step Three insufficient to satisfy the ALJ's duty to discuss the evidence and provide an "explained conclusion" per the holding in *Reynolds*, but it also arguably violated the treating physician rule, giving no explanation as to the weight afforded to the opinion of Dr. Kurtz.

The ALJ's Step Three analysis deprives the Court of a meaningful opportunity for judicial review. Other district courts in this Circuit have reached the same conclusion under similar circumstances. *See Marok*, 2010 WL 2294046 at * 4-5 (finding ALJ's passing reference to ME testimony that claimant did not meet a Listing was insufficient to describe the reasons for his Step Three determination because "[t]o decipher what the medical expert said, the reader must travel back to the transcript – something not immediately accessible to the typical reader, including [claimant]"); *Shea*, 2012 WL 967088 at * 10-11 (finding Step Three analysis insufficient when ALJ mentioned, without describing, the findings and opinions of "treating or examining physicians" and "State agency medical consultants" to find claimant did not meet Listing).

The Commissioner argues the ALJ's Step Three determination should be upheld because the medical evidence does not establish that Brown's seizure disorder satisfied the criteria for listing 11.03. The Commissioner refers to specific medical evidence in the record in support of his position. (ECF No. 16 at 11-13.) Unfortunately, the ALJ did not include such an analysis at Step Three and the Court cannot engage in *post hoc* rationalizations. *See S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947) (a reviewing court must judge the propriety of agency action "solely by the

grounds invoked by the agency"). As this Court has previously observed, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *Waller*, 2012 WL 6771844 at * 3. *See also May*, 2011 WL 3490186 at * 9. While the Commissioner may ultimately be correct that Brown does not suffer from a listing level impairment, this Court cannot make such a determination without an appropriate Step Three analysis.

Moreover, the ALJ's failure to explain how he reached the conclusion that Brown's seizure disorder did not meet or medically equal a listing is not harmless error because, if Brown is found to meet a listed impairment, he would be disabled within the meaning of the regulations and entitled to benefits without any further additional analysis. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Reynolds*, 2011 WL 1228165 at * 4. For the same reason, the ALJ's discussion of the evidence at later steps in the sequential evaluation does not cure the failure to conduct an appropriate Step Three analysis. Further, Brown did submit medical evidence suggesting that her seizure disorder may have been epileptic in nature. Therefore, this is not a case where the record is devoid of any medical evidence that might support a finding of listing-level severity.

Because the Court cannot discern the reasons for the ALJ's decision, this matter is remanded for a more thorough Step Three determination regarding Brown's seizure disorder.[4]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the

---

[4] As the Court finds a remand is warranted, Brown's other assignments of error will not be addressed.

13

case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

      IT IS SO ORDERED.

                                         /s/ Greg White
                                         U.S. Magistrate Judge

Date: July 25, 2013